UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NATHAN DAVID ROBINSON,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social Security, [1]<br><br>                    Defendant. | Case No. 3:10-cv-05572-KLS<br><br>ORDER REVERSING AND<br>REMANDING DEFENDANT'S<br>DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of her applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be reversed and that this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On February 17, 2005, plaintiff filed an application for disability insurance benefits and another one for SSI benefits, alleging in both applications that she became disabled beginning November 11, 2003, due to back and hip problems and confusion due to medications. See ECF

---

[1] On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of the Social Security Administration. Therefore, under Federal Rule of Civil Procedure 25(d)(1), Carolyn W. Colvin is substituted for Commissioner Michael J. Astrue as the Defendant in this suit. **The Clerk of Court is directed to update the docket accordingly.**

ORDER - 1

#19, Administrative Record ("AR") 43, 162. Both applications were denied upon initial administrative review on August 3, 2005, and on reconsideration on December 14, 2005. See AR 43. A hearing was held before an administrative law judge ("ALJ") on February 21, 2008, at which plaintiff, represented by counsel, appeared and testified, as did a vocational expert. See AR 247-70.

In a decision dated May 16, 2008, the ALJ determined plaintiff to be not disabled. See AR 43-54. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on June 18, 2010, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner"). See AR 37; see also 20 C.F.R. § 404.981, § 416.1481. Plaintiff appealed that decision to this Court, which on December 16, 2010, remanded the matter for further administrative proceedings pursuant to sentence six of 42 U.S.C. § 405(g)[2] based on the Commissioner's unopposed motion to do so. See AR 31-32.

On remand, the Appeals Council vacated the ALJ's decision (see AR 25-26), and a second hearing was held before the same ALJ on May 26, 2011, at which plaintiff, represented by counsel, appeared but did not testify, and at which a different vocational expert appeared as well but did not testify (see AR 1067-73). In a decision dated September 23, 2011, the ALJ

---

[2] Section 405(g) of Title 42 of the United States Code "authorizes district courts to review administrative decisions in Social Security benefit cases." Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir. 2002). The fourth sentence ("sentence four") and sixth sentence ("sentence six") of Section 405(g) "set forth the exclusive methods by which district courts may remand [a case] to the Commissioner." Id. "The fourth sentence of § 405(g) authorizes a court to enter 'a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." Melkonyan v. Sullivan, 501 U.S. 89, 98 (1991); see also Akopyan, 296 F.3d at 854 (sentence four remand is "essentially a determination that the agency erred in some respect in reaching a decision to deny benefits."). In a sentence four remand, therefore, the reviewing court enters "a final judgment." Akopyan, 296 F.3d at 854; see also Shalala v. Schaefer, 509 U.S. 292, 297 (1993) ("Immediate entry of judgment (as opposed to entry of judgment after postremand agency proceedings have been completed and their results filed with the court) is in fact the principal feature that distinguishes a sentence-four remand from a sentence-six remand."). A sentence six remand, on the other hand, "may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." Akopyan, 296 F.3d at 854. Accordingly, "[u]nlike sentence four remands, sentence six remands do not constitute final judgments." Id. at 855. Rather, the court retains jurisdiction pending completion of the post-remand proceedings. See Melkonyan, 501 U.S. at 102.

ORDER - 2

again determined plaintiff to be not disabled. See AR 10-19.  It does not appear from the record that the Appeals Council assumed jurisdiction of the case. See 20 C.F.R. § 404.984, § 416.1484. The ALJ's decision therefore became the Commissioner's final decision after sixty days. Id.

On October 1, 2012, the Court granted the parties' stipulated motion to have this case re-opened following the above post-remand proceedings.  See ECF #13-#15.  The administrative record was filed with the Court on October 15, 2012.  See ECF #19.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits because the ALJ erred: (1) in evaluating the medical opinion evidence from Robert Burlingame, M.D., Janis Lewis, Ph.D., Lane van der Sluis, Psy.D., and Brian L. Grant, M.D.; (2) in discounting plaintiff's credibility; and (3) in rejecting the lay witness evidence in the record.  For the reasons set forth below, the Court agrees the ALJ erred in evaluating the opinion evidence from Drs. Burlingame, Lewis, van der Sluis and Grant, and in rejecting the lay witness evidence in the record.  The Court finds as well for the reasons set forth below that while defendant's decision to deny benefits should be reversed on this basis, this matter instead should be remanded for further administrative proceedings.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the

ORDER - 3

proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)).[3]

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639,

---

[3] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 4

642 (9th Cir. 1982).  In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999).  Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725.  The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id.  The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642.  Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31.  However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).  The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830.  On the other hand, an ALJ need

ORDER - 5

not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

   A.   Dr. Burlingame

Plaintiff takes issue with the following evaluation of the medical opinion evidence from Dr. Burlingame provided by the ALJ:

> The psychiatric evaluation by Robert Burlingame, M.D., a psychiatrist, date January 27, 2008 has been reviewed and considered by the undersigned. In this evaluation, Dr. Burlingame diagnosed the claimant with a bipolar affective disorder with psychotic features; a pain disorder with general medical condition and psychological factors; a history of chemical dependency; and a personality disorder, passive, dependent. He gave him a global assessment of functioning score of 40 and opined it had been 40 for the past twelve months.[4] He opined the claimant has reached maximum medical improvement and is chronically mentally ill. He opined the claimant was permanently partially disabled. Dr. Burlingame earlier provided a form in which he checked marked boxes that indicated the claimant would have noticeable difficulty or no ability to perform 15 work-related activities (Exhibit 2F/29F). This form was given little weight in the previous decision as Dr. Burlingame did not provide any objective medical findings on this form to support his conclusions. He also provided a second form, after his January

---

[4] A global assessment of functioning ("GAF") score is "a subjective determination based on a scale of 100 to 1 of 'the [mental health] clinician's judgment of [a claimant's] overall level of functioning.'" Pisciotta v. Astrue, 500 F.3d 1074, 1076 n.1 (10th Cir. 2007) (citation omitted). A GAF score is "relevant evidence" of the claimant's ability to function mentally. England v. Astrue, 490 F.3d 1017, 1023, n.8 (8th Cir. 2007). "A GAF score of 31-40 indicates some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." White v. Commissioner of Social Sec., 572 F.3d 272, 276 (6th Cir. 2009) (citation omitted); see also Salazar v. Barnhart, 468 F.3d 615, 624 n.4 (10th Cir. 2006).

ORDER - 6

> evaluation, dated February 20, 2008, where he again found many noticeable difficulty [sic] or no ability to perform mental activities such as sustained concentration, social interaction, and adaptation. These forms and his examination are given little weight as they appear to be based almost solely on the claimant's subjective allegations. There are many inconsistencies in this evaluation. While the claimant alleges hallucinations, suicide attempts, paranoid delusions, and getting disoriented, this was the first time he made any of these allegations. His activities of daily living are inconsistent with these level [sic] of allegations. He admitted hobbies of photography, hunting, and fishing, but not having the time or money to pursue them. He also admitted taking his daughter to school at 6:15 a.m.; does some dishes, laundry, and makes lunch. He also prepares dinner from 4:30 to 6:30 p.m. After dinner, he does house chores, drives kids to activities, and helps his kids with homework. These activities are not indicative of one who is having paranoid delusions, disorientation, or hallucinations. He now alleges taking no medication and receiving no formal psychological treatment, but he does get counseling at his church and is taking herbal medications such as St. John's wort. He was previously able to access medical services and he has never really pursued psychological treatment even when he was receiving workers compensation benefits. There is simply no corroborating evidence [sic] support the level of psychological impairment that the claimant alleges and Dr. Burlingame's findings are not supported by any other examiner.

AR 17-18. Specifically, plaintiff argues the reasons the ALJ offered for rejecting the opinion of Dr. Burlingame here are not supported by substantial evidence. The Court agrees.

The opinion of a physician premised largely on a claimant's subjective complaints may be discounted where the record supports the ALJ in discounting the claimant's credibility. See Tonapetyan, 242 F.3d at 1149; Morgan, 169 F.3d at 601. Here, though, the record does not clearly show this is what Dr. Burlingame did. As plaintiff notes, Dr. Burlingame's evaluation report contains a summary of the medical records he reviewed and the findings of a mental status examination he performed, in addition to a presentation of plaintiff's self-reported history. See AR 662-65. The medical records summary Dr. Burlingame provided, however, does not clearly support his opinion, and the mental status examination findings are fairly unremarkable. See id. On the other hand, as plaintiff also notes, Dr. Burlingame conducted psychological testing as well, which suggested "severe depression" and a "symptom pattern" that included the following

ORDER - 7

elements: "no longer able to function well," "losing his thought processes" and "very passive dependent interpersonal relations." AR 665.  Further, there is no indication that Dr. Burlingame relied to a greater extent on plaintiff's self-reporting than he did on the above psychological test results in opining as he did. See AR 665-66.

As to the inconsistencies the ALJ found, the record does not fully support their existence.  For example, plaintiff actually denied having had a suicide attempt to Dr. Burlingame, although he admitted to having had suicidal thoughts. See AR 664.  Further, in early September 2006, plaintiff did report having had a possible prior suicide attempt. See AR 638.  Also at that time he reported to Dr. Grant that he had "occasional paranoia," and while Dr. Grant noted that "frank hallucinations" were denied, Dr. Grant also noted that plaintiff admitted to "often talk[ing] to himself," indicating this may be suggestive of at least some level of distortion in his ability to perceive reality. AR 639.  Accordingly, the Court finds the validity of this basis for rejecting Dr. Burlingame's opinion has not been fully established.[5]

The ALJ's reliance on plaintiff's lack of mental health treatment also does not have full support in the record.  It appears the ALJ relied on that evidence more to discount the credibility of plaintiff rather than that of Dr. Burlingame.[6] See AR 17.  Even so, the ALJ seems not to have given full consideration to the reasons why plaintiff may not have sought greater mental health

---

[5] As noted above, the ALJ also discounted plaintiff's report of paranoid delusions, disorientation and hallucinations on the basis that those symptoms are inconsistent with plaintiff's reported activities of daily living. See Morgan, 169 F.3d at 601-02 (upholding rejection of physician's conclusion that claimant suffered from marked limitations in part on basis that claimant's reported activities of daily living contradicted that conclusion).  But the activities the ALJ lists (see AR 17) are not necessarily incompatible therewith, particularly given the conflicting evidence in the record concerning the exact nature and extent of plaintiff's participation in those activities. See AR 183-93, 195-202, 204-18, 437, 497-99, 639, 664.

[6] See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ's discounting of claimant's credibility in part due to lack of consistent treatment, noting that fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered claimant's failure to request serious medical treatment for supposedly excruciating pain).

ORDER - 8

treatment, such as being unable to afford it.[7] See 438, 484.[8] Lastly, the ALJ rejects the opinion of Dr. Burlingame on the basis that his "findings are not supported by any other examiner." AR 18. But as noted by plaintiff, Dr. van der Sluis and Dr. Grant assessed him with a GAF score of 45 and 50 respectively (see AR 547, 640), which – while not quite as severe as the GAF score of 40 assigned by Dr. Burlingame – clearly indicates serious mental functional limitation, including the inability to keep a job.[9]

>   B.   Dr. Lewis

The record contains a mental residual functional capacity assessment ("MRFCA") form completed by Dr. Lewis in late July 2005, in which she checked boxes contained in Section I ("SUMMARY CONCLUSIONS") thereof indicating plaintiff had a number of moderate mental functional limitations. See AR 570-71. That form also contains a Section III ("FUNCTIONAL CAPACITY ASSESSMENT"), in which Dr. Lewis further wrote that plaintiff could "cooperate with others," that he could "accept instructions," that he was "moderately impaired" in his ability to adapt to change, and that he was "able to work at [a] slow pace, with minimal public contact, performing complex tasks." AR 572. Plaintiff argues the ALJ ignored the findings of Dr. Lewis, which constitutes reversible error. The Court again agrees.

---

[7] While the ALJ noted that plaintiff had "never really pursued psychological treatment even when he was receiving workers compensation benefits" (AR 17), the record indicates that such benefits did not fully cover all of plaintiff's needs in this area (see AR 438 ("[Plaintiff] states there have been some difficulties with getting medications paid or getting coverage for the family, but overall it appears the [workers compensation] claim is going fairly well most of the time."), 617 ("CYMBALTA was declined and then later approved for only ½ of his dose.")). In addition, there is no indication that the "counseling" plaintiff got at his church was psychological or psychiatric in nature, or that it, along with the St. John's wort, is equivalent to or as effective as such more formal treatment options.

[8] but see AR 505 (noting plaintiff "failed [to attend] the fourth [psychiatric consultation] session, and did not contact [the evaluating psychologist] again," while giving no indication this was due to lack of financial resources).

[9] "A GAF score of 41-50 indicates '[s]erious symptoms . . . [or] serious impairment in social, occupational, or school functioning,' such as an inability to keep a job." Pisciotta, 500 F.3d at 1076 n.1 (quoting Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 34); see also Cox v. Astrue, 495 F.3d 614, 620 n.5 (8th Cir. 2007) ("[A] GAF score in the forties may be associated with a serious impairment in occupational functioning."); England, 490 F.3d at 1023, n.8 (GAF score of 50 reflects serious limitations in individual's general ability to perform basic tasks of daily life).

ORDER - 9

The findings contained in Section III of the MRFCA form constitute significant probative evidence of plaintiff's ability to function that the ALJ could not disregard without an explanation for doing so.[10] See Vincent, 739 F.3d at 1394-95; Cotter, 642 F.2d at 706-07; Garfield, 732 F.2d at 610. Specifically, Dr. Lewis felt plaintiff was moderately impaired in his ability to adapt to change, and could only work at a slow pace, involving minimal public contact. AR 572. These limitations are not consistent with those adopted by the ALJ. See AR 15 (finding plaintiff could have occasional public contact, and placing no restrictions on pace or ability to adapt to change). Although defendant is correct that the ALJ did mention the opinion of Dr. Lewis in his decision (see AR 14), the ALJ provided no analysis thereof, let alone the reasons for not fully adopting the limitations assessed therein. The ALJ thus erred here as well.

C.   Dr. van der Sluis and Dr. Grant

As noted above, plaintiff was assessed with GAF scores of 45 and 50 by Dr. van der Sluis and Dr. Grant. Plaintiff argues, and once more the Court agrees, the ALJ erred in not addressing those scores in his decision. As also noted above, a GAF score constitutes "relevant evidence" of the claimant's ability to function mentally, and therefore may be "of considerable help" in assessing the residual functional capacity of a claimant. England, 490 F.3d at 1023, n.8; Howard

---

[10] Plaintiff argues the ALJ also erred in ignoring the specific moderate mental functional limitations checked off by Dr. Lewis in Section I of the MFRCA form. But Pursuant to the directive contained in defendant's Program Operations Manual System ("POMS"), **"[i]t is the narrative** written by the psychiatrist or psychologist **in [S]ection III . . . that adjudicators are to use as the assessment of [the claimant's residual functional capacity (']RFC[']**." POMS DI 25020.010B.1, https://secure.ssa.gov/apps10/poms.nsf/lnx/0425020010 (emphasis in original). While is true as plaintiff points out that the POMS "does not have the force of law," the Ninth Circuit has recognized it as "persuasive authority." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1005 (9th Cir. 2006). Plaintiff asserts "[t]he fact that the psychologist [completing the MRFCA form] does not elaborate in Section III on all of her assessed limitation[s] in Section I, is not a reason to ignore the limitations." ECF #31, p. 5. But the plain language of the POMS specifically directs the adjudicator to use Section III, rather than Section I. In addition, while plaintiff argues there is no evidence that Dr. Lewis "intended for Section III to be [her] sole and entire mental residual functional capacity" (id. at p. 6), nor is there any evidence that Dr. Lewis intended for Section III to incorporate the specific limitations checked off in Section I. Regardless, plaintiff's argument still does not take into account the fact that the ALJ is required to look at the written narrative contained Section III rather than the checked boxes in Section I. Accordingly, the Court finds no valid reasons for not following the POMS in this case.

ORDER - 10

v. Commissioner of Social Security, 276 F.3d 235, 241 (6th Cir. 2002).  Again as noted above, the GAF scores of 45 and 50 indicate serious impairment in social or occupational functioning, including the inability to keep a job.  Particularly in light of the very low GAF score also given by Dr. Burlingame, the ALJ should have considered these scores as well.

      Defendant argues the ALJ did not err here with respect to Dr. Grant's assigned score, because Dr. Grant "declined to attribute any mental health impairment to the work injury that prompted his psychiatric evaluation, or to provide an impairment rating." ECF #27, p. 15; see also AR 641.  But the mere fact that Dr. Grant could not attribute any mental health impairment or provide an impairment rating in relation to plaintiff's workers compensation claim, does not prove that Dr. Grant did not feel plaintiff actually had a mental health impairment.  Indeed, Dr. Grant expressly found that "[s]ignificant pathology" was "suggested including [an] underlying personality disorder." AR 640.  Dr. Grant further stated that "[s]uccessful treatment or work adjustment" were "both problematic." Id.  Lastly, Dr. Grant felt plaintiff's "current situation" was "chronic and likely refractory to meaningful treatment." Id.

      In regard to Dr. van der Sluis, defendant argues the assertion that the ALJ should have discussed the GAF score she assessed is undermined by the ALJ's adoption of the limitation to occasional public contact and simple, repetitive tasks, which he based in part on the assessment of Dr. van der Sluis.  But a GAF score of 45 indicates such a serious impairment in social or occupational functioning – such as an inability to keep a job as noted above – that it necessarily indicates potential mental functional limitations much greater than the two assessed by the ALJ, particularly as the ALJ found plaintiff to be not disabled based on the limitations he adopted.  In any event, without the ALJ's discussion thereof, it is impossible to determine whether he in fact took the GAF scores of either medical source into proper account.  Thus, here too the ALJ erred.

ORDER - 11

II.     The ALJ's Evaluation of the Lay Witness Evidence in the Record

Lay testimony regarding a claimant's symptoms "is competent evidence that an ALJ must take into account," unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).  In rejecting lay testimony, the ALJ need not cite the specific record as long as "arguably germane reasons" for dismissing the testimony are noted, even though the ALJ does "not clearly link his determination to those reasons," and substantial evidence supports the ALJ's decision. Id. at 512.  The ALJ also may "draw inferences logically flowing from the evidence." Sample, 694 F.2d at 642.

The record contains written lay witness statements from plaintiff's wife and friends, in which they set forth their observations of plaintiff's symptoms and limitations. See AR 157-59, 183-91, 195-203.  With respect to those statements, the ALJ stated that they were "previously reviewed in [his] prior decision and do not show [plaintiff's] residual functional capacity was more restricted than detailed in this decision." AR 18.  The Court agrees with plaintiff that this statement falls far short of the required germane reasons the ALJ must give to discount the lay witness observations of plaintiff's wife and friend.  Defendant argues the ALJ incorporated the reasons he gave in his prior decision for rejecting those observations, but it is far from clear that this is what the ALJ did here.  Rather, the ALJ merely stated that that they had been reviewed in his prior decision, and that they do not show plaintiff to be more limited than the ALJ found him to be in his current decision.  This is insufficiently specific, and therefore it does not constitute a germane reason for rejecting the lay witness evidence in the record.

III.    This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award

ORDER - 12

benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain regarding the medical opinion and lay witness evidence in the record, and thus with respect to plaintiff's residual functional capacity and his ability to perform other jobs existing in significant numbers in the national economy,[11] remand for further consideration of those issues is appropriate. Although the Court realizes this will be the second time this case

---

[11] Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R. § 404.1520; 20 C.F.R. § 416.920. If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id. If a disability determination "cannot be made on the basis of medical factors alone at step three of that process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." Social Security Ruling 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id.; see alsoTackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (if claimant cannot perform past relevant work, at step five of sequential disability evaluation process ALJ must show there are significant number of jobs in national economy he or she is able to do).

ORDER - 13

is remanded for further administrative proceedings, for the reasons discussed herein an outright award of benefits at this time is not warranted.

Plaintiff argues that in light of the ALJ's errors in rejecting Dr. Burlingame's opinion, that opinion should be credited as true. Where the ALJ has failed "to provide adequate reasons for rejecting the opinion of a treating or examining physician," that opinion generally is credited "as a matter of law." Lester, 81 F.3d at 834 (citation omitted). However, where the ALJ is not required to find the claimant disabled on crediting of evidence, this constitutes an outstanding issue that must be resolved, and therefore the Smolen test will not be found to have been met. Bunnell v. Barnhart, 336 F.3d 1112, 1116 (9th Cir. 2003). There is conflicting medical opinion and other evidence in the record that the ALJ credited, which plaintiff has not challenged and/or in regard to which no error has been found, that contradicts many of the findings and opinions of Drs. Burlingame, Lewis, van der Sluis, and Grant. See AR 16-18. As such, it is far from clear that the ALJ would be required to credit the findings or opinions of any of those medical sources to the extent they are inconsistent with his own findings, and thus the Court declines do apply the credit as true rule here.

Plaintiff also asserts the lay witness statements should be credited as true on the basis of the ALJ's failure to properly reject them. Where lay witness evidence is improperly rejected, that testimony may be credited as a matter of law. See Schneider v. Barnhart, 223 F.3d 968, 976 (9th Cir. 2000) (finding that when lay evidence rejected by ALJ is given effect required by federal regulations, it became clear claimant's limitations were sufficient to meet or equal listed impairment). As noted by the Ninth Circuit, though, the courts have "some flexibility" in how they apply the "credit as true" rule. Connett, 340 F.3d at 876. Further, Schneider dealt with the situation where the Commissioner failed to cite any evidence to contradict the statements of five

ORDER - 14

lay witnesses regarding her disabling impairments. 223 F.3d at 976.  Such is not the case here for the reasons discussed above.  Accordingly, the Court declines to apply the credit as true rule in this instance as well.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ improperly concluded plaintiff was not disabled.  Accordingly, defendant's decision to deny benefits is REVERSED and this matter is REMANDED for further administrative proceedings in accordance with the findings contained herein.

DATED this 6th day of September, 2013.

Karen L. Strombom
United States Magistrate Judge

ORDER - 15